FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 26, 2023

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL A.,[1]<br><br>          Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | No. 2:22-cv-00130-RHW<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ECF Nos. 15, 16, 20** |

Before the Court is the Report and Recommendation issued by Magistrate Judge Alexander C. Ekstrom on September 20, 2023, ECF No. 20, recommending Plaintiff's Motion for Summary Judgment, ECF No. 15, be granted and Defendant's Motion for Summary Judgment, ECF No. 16, be denied. Defendant filed objections to the Report and Recommendation and Plaintiff responded. ECF Nos. 21, 22. After reviewing the Report and Recommendation, the Court finds the Magistrate Judge's recommendation is correct. Therefore, the Court adopts the

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

Report and Recommendation in its entirety, albeit with the additional findings below and modification of the remand instructions.

## DISCUSSION

The sole issue is whether substantial evidence supports the ALJ's finding that Dr. Thomas Genthe's July 2019 medical opinion is not persuasive. Dr. Genthe completed psychological/psychiatric evaluations in November 2018 (Tr. 485-92), February 2019 (Tr. 478-84) and July 2019 (Tr. 467-77). Relevantly, the July 2019 opinion assessed the overall severity of Plaintiff's mental impairments as "marked" and assessed marked and moderate limitations in numerous basic work areas. Tr. 470-71. The ALJ collectively concluded that all three opinions were unpersuasive for a number of reasons. Tr. 24. The ALJ may analyze multiple medical opinions from the same source together in a single analysis. *See* 20 C.F.R. § 416.920c(b)(1), § 404.1520c(b)(1). However, in doing so the ALJ is required to "articulate in [the] determination or decision how persuasive [the ALJ] find[s] all of the medical opinions ... in [a claimant's] case record" and must address what the Commissioner has designated as the "most important factors": supportability and consistency. *Id*. §§ Id. §§ 404.1520c(b)(2), 416.920c(b)(2).

As Defendant objects to the entire Report and Recommendation, the Court addresses all eight reasons articulated by the ALJ to discount Dr. Genthe's July 2019 opinion. Seven of the reasons relate to supportability and none of them are

ORDER - 2

supported by substantial evidence.  The Court also addresses the ALJ's consistency analysis, which likewise, is not supported by substantial evidence.

  1. *Inconsistent objective evidence*

First, the ALJ found Dr. Genthe's opinions unpersuasive because the ALJ found them inconsistent with "unremarkable" mental status examinations.  However, as the Report and Recommendation concludes, Plaintiff's mental status examinations were not "unremarkable."  Dr. Genthe conducted a mental status examination which contained abnormal findings.  *See* Tr. 467-74 (noting Plaintiff had a nervous affect and insight and judgment falling below normal limits).  The ALJ's conclusion is not supported by substantial evidence.

  2. *Duration requirement*

The ALJ also noted that Dr. Genthe's first two evaluations assessed limitations expected to last less than 12 months.  Tr. 24.  However, Dr. Genthe's July 2019 opinion assessed limitations expected to last at least 12 months.  Tr. 471.  Dr. Genthe's duration findings contained in his earlier medical opinions do not provide substantial evidence to discount Dr. Genthe's July 2019 opinion.

  3. *Clinical explanation*

The ALJ found that Dr. Genthe "did not provide any significant explanation" as to what "findings accounted for his ratings."  Tr. 24.  However, contrary to the ALJ's finding, Dr. Genthe's July 2019 opinion included detailed

ORDER - 3

clinical findings explaining three new diagnoses, a two-paragraph summary explanation of his clinical observations and evaluation, and additional narrative throughout the psychometric test results.  Tr. 469-77.  The ALJ's conclusion is not supported by substantial evidence.

  *4.  Testing*

  The ALJ found Dr. Genthe's opinions unpersuasive because the ALJ found them based on "cursory evaluations with no meaningful psychometric testing."  Tr. 24.  The ALJ is not qualified to substitute his own lay interpretation of the psychometric test results (finding they were not "meaningful") for the uncontradicted statement of the doctor who performed the test and opined as to the test's medical significance.  *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).  As part of the Personality Assessment Inventory (PAI) performed in July 2019, Dr. Genthe acknowledged certain test indicators fell outside normal range.  Tr, 474-75.  He explained the meaning of these results and found that the testing was not at a level of distortion that "would render the result

ORDER - 4

uninterpretable." Tr. 474 ("Elevations in the range are often indicative of a cry for help, or of a markedly negative evaluation of oneself and ones[sic] life."); Tr. 474-75 (explaining that "profile patterns of this type are usually associated with marked distress and…severe impairment in functioning). Dr. Genthe did not question the probative nature of the test results in July 2019. The ALJ's conclusion that the testing was not "meaningful" is not supported by substantial evidence.

      5. *Differing medical opinions of the same source*

      The ALJ also found that Dr. Genthe's opinions involved "dramatic fluctuations without any explanation."[2] Tr. 24 (emphasis added). These "fluctuations" were described by the ALJ as the variation between his February 2019 opinion, which the ALJ claimed indicated that Plaintiff had "no limitation in any of the work related categories," and his two other opinions which included some "marked" limitations. Tr. 24.

      First, the Court notes that both the ALJ and Defendant inaccurately described Dr. Genthe's February 2019 opinion, which indicated that Plaintiff had "no *significant* limitation" not that he had "no limitation" in the work-related

---

[2] Defendant suggests the ALJ rejected Dr. Genthe's opinions because they "contradict each other," but this was not the finding made by the ALJ. ECF No. 21 at 4.

ORDER - 5

categories. *See* Tr. 480 (emphasis added); ECF No. 21 at 5; Tr. 24.

Second, although it is permissible to find a medical opinion is inconsistent if it gives no explanation or provides no clinical basis for deviating from the source's prior medical opinion, that is not the case here. *See, e.g.*, *Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). Dr. Genthe's opinions provided a clinical basis to support his changed opinions which the ALJ never analyzed. During the first evaluation, Dr. Genthe reported that Plaintiff was "actively using meth[amphetamine]" and was not engaged in mental health treatment. Tr. 487-88. During the second evaluation, Plaintiff's stimulant use disorder was in early remission and his outpatient treatment had just begun. Tr. 473 (Plaintiff reported engaging in mental health counseling services for "three weeks"). Other than the drug use disorders, the only other diagnosis made by Dr. Genthe in February 2019 was anxiety disorder. Tr. 480. Dr. Genthe's July 2019 evaluation occurred after Plaintiff had been engaged in treatment for six months and Plaintiff's stimulant use disorder was "in sustained remission." Dr. Genthe explained he was able to evaluate the "chronic nature of [Plaintiff's] symptoms," in spite of treatment, and concluded Plaintiff's prognosis was poor. Tr. 471. In addition to Plaintiff's drug use disorders, the July 2019 assessment included three new diagnoses including major depressive disorder, post-traumatic stress disorder and intermittent explosive disorder. Tr. 470. Dr. Genthe explained why Plaintiff's prognosis was poor,

ORDER - 6

1  describing Plaintiff's symptoms and stating that "[a]lthough [Plaintiff] started
2  taking medication, at this point, his symptoms have not improved to the point of
3  him being able to resume normal work activities."  Tr. 471.
4      Defendant's assertion that "nothing else" other than Dr. Genthe's assessment
5  of limitations changed between the February 2019 and July 2019 assessments
6  disregards the clinical facts and distinct clinical explanations set forth in Dr.
7  Genthe's opinions.  ECF No. 21 at 5.  Even though Dr. Genthe's July 2019 opinion
8  differs from his earlier opinions, "[t]he case is … not one of conflicting medical
9  viewpoints but one in which differing opinions 'are not drawn from the same
10 facts.' "  *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987) (quoting *Beecher
11 v. Heckler*, 756 F.2d 693, 695 (9th Cir. 1985)) (cleaned up).  For this reason, the
12 cases cited by Defendant are inapposite.  *See Natalie Lynn W. v. Comm'r v. Soc.
13 Sec.*, No. 2:21-CV-0231-TOR, 2022 WL 1787081, at *7 (E.D. Wash. June 1, 2022)
14 (finding opinion inconsistent with statement of same source of the same date);
15 *Ramos v. Comm'r of Soc. Sec.*, No. CV-21-00503-PHX-MTL, 2022 WL 2600175,
16 at *3 (D. Ariz. July 8, 2022) (finding opinions inconsistent where one stated
17 symptoms were not exacerbated by a medical condition and the other stated "the
18 exact opposite conclusion.").
19     The ALJ's conclusion is not supported by substantial evidence.
20

ORDER - 7

*6. Exaggeration*

The ALJ also found that Dr. Genthe's July 2019 opinion was unsupported because Dr. Genthe acknowledged Plaintiff was "probably overstating his difficulties" during testing, but he still assessed marked limitations. Tr. 24. Dr. Genthe acknowledged in the PAI that there may have been some idiosyncratic responses to particular items that could affect test results. Certain indicators fell outside of the "normal range," suggesting that Plaintiff "may not have answered in a completely forthright manner" and the nature of Plaintiff's responses "might lead the evaluator to form a somewhat inaccurate impression . . . based on the style of responding." Tr. 474. With respect to negative impression management, Dr. Genthe stated that certain results raised "the possibility of a mild exaggeration of complaints and problems," but then explained that these results are often indicative of a "cry for help, or of a markedly negative evaluation of oneself and ones[sic] life." *Id*. Dr. Genthe added that this "does not necessarily indicate a level of distortion that would render the test results uninterpretable." Tr. 474. Finally, Dr. Genthe noted it was "possible that the clinical scales may overrepresent or exaggerate the actual degree of psychopathology." Tr. 474. Nonetheless, Dr. Genthe found that these profile patterns are usually associated with "marked distress," and unless there is "extensive distortion or exaggeration of symptomatology, severe impairment in functioning is typically present." Tr. 475.

ORDER - 8

Dr. Genthe did not find that Plaintiff was malingering and Dr. Genthe did not clearly question the July 2019 PAI test results.

In *David D. v. Saul*, 405 F. Supp. 3d 868, 882 (D. Or. 2019), the district court addressed a situation nearly identical to the one presented here. In that case, two psychologists administered PAIs and noted that the claimant's "PAIs indicated some possible exaggeration." *Id*. However, "each [psychologist], after conducting other objective tests, reviewing medical records, and conducting interviews ..., reached their opinions despite any possible exaggeration in the PAIs." *Id*. The district court held that the ALJ erred in discounting a medical opinion based on the psychologists' statements regarding evidence of exaggeration, noting that the psychologists "did not ignore the potential exaggeration in the PAI, but expressly acknowledged it and found it not to overcome the other evidence in forming their opinions." *Id*. at 883.

Similarly here, Dr. Genthe did not ignore the potential exaggeration in Plaintiff's PAI. Rather, Dr. Genthe expressly acknowledged it and then based his conclusions on his own behavioral observations, clinical interview and the PAI profile scores. Accordingly, the ALJ erred in discounting Dr. Genthe's July 2019 opinion based on his statements regarding potential exaggeration in the PAI profile because Dr. Genthe acknowledged and accounted for that issue in forming his opinion.

ORDER - 9

1    The ALJ's conclusion is not supported by substantial evidence.

2    *7. Substance abuse*

3    Finally, the ALJ found Dr. Genthe's "ratings were overstated" because "much of what [Plaintiff] reported as psychiatric symptoms may be connected to his experiences with substance abuse, withdrawal and early recovery." Tr. 24. The ALJ's speculation is not supported by substantial evidence or a valid basis to discount Dr. Genthe's July 2019 opinion. In reaching this conclusion, the ALJ relied upon a record review performed by Dr. Harmon in June 2019. Tr. 1151-52. Dr. Harmon did not review Dr. Genthe's July 2019 opinion. *See* Tr. 1151. Although Dr. Genthe's November 2018 evaluation necessarily reflected Plaintiff's abilities with substance abuse, Dr. Genthe's July 2019 opinion was rendered after six months of sobriety. There is no evidence that the effects of past substance use were still lingering. The ALJ's conclusion is also contrary to Dr. Genthe's opinion that Plaintiff's limitations were *not* primarily the result of a substance use disorder. Tr. 471.

    The ALJ's conclusion is not supported by substantial evidence.

    *8. Consistency*

    As to consistency, the ALJ found Dr. Genthe's July 2019 opinion was inconsistent with Plaintiff's "benign treatment records" showing that Plaintiff reported he was "doing fine/okay," as well as improving. Tr. 24. Defendant

contends that this inconsistency alone provides a basis for the Court to affirm the ALJ's decision.  ECF No. 21 at 8.

Reports of "doing well" or "okay" in the context of mental-health treatment do not necessarily speak to any objective level of functioning.  *See Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007); *see also Garrison v. Colvin*, 759 F.3d 996, 1017 (9th Cir. 2014) (quoting with approval *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to [his] work-related functional capacity.")).  The record evidences that Plaintiff in fact reported he was doing "okay," "fine" "alright" or "the same" in nearly every therapy session.  Despite his reports, the actual treatment notes reflect Plaintiff was having nightmares, difficulty sleeping, irritability, depression, anxiety, social isolation, and stress; he was in altercations; and required medication education, changes and increases.  *See e.g.*, Tr. 683 (4/29/2019) (reports doing "okay" while also experiencing stress, frustration due to ineffective medication, and increased anxiety, irritability, depression, sleep disturbances, and isolation.); Tr. 704 (7/1/2019) (reports doing "okay" while discussing concerns of extreme social anxiety and needing to utilize deep breathing skills during the session); Tr. 715 (7/26/2019) (reports doing

ORDER - 11

"okay" while noting he could not leave his brother's home for five days due to social and other fears); Tr. 801 (11/28/2018) (reports doing "okay" while explaining that he "spiraled" on Thanksgiving); Tr. 902 (6/19/2019) (reports doing "okay," but explains he has been sick and needs medical care); Tr. 954 (9/6/2019) (reports doing "alright" but also feeling "more on edge," increased irritability, and isolation); Tr. 958 (9/27/2019) (reports doing "okay" but due to medication ineffectiveness, prescribed new medication to stabilize symptoms of anxiety, irritability and sleep issues); Tr. 974 (10/30/2019) (reports doing "okay" but had failed to begin new medication due to fear of death/side effects and reported increased agitation, isolation and poor sleeping patterns); Tr. 999-1000 (reports doing "okay" but failed to make progress on goal of decreasing isolation); Tr. 1011-12 (1/29/2020) (reports doing "okay" but expressed fear of crowds and of reliving his past in an upcoming EMDR appointment); Tr. 1065 (6/3/2020) (reports feeling "fine" because "nobody is around" and also ongoing isolation, nightmares); Tr. 1351 (3/5/2021) (reports doing "okay" but test scores showed moderately severe depression and a failure to engage in outside activities). Accordingly, it was improper for the ALJ to reject Dr. Genthe's July 2019 opinion based on Plaintiff's self-reports in the treatment setting that he was "doing okay." *See Hutsell*, 259 F.3d at 712.

The ALJ also concluded that Dr. Genthe's July 2019 opinion was

inconsistent with treatment records showing that Plaintiff was improving. Tr. 24. "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability," and an ALJ may discount a claimant's reported symptoms if they sufficiently improved with treatment. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). *See also* 20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement). When presented with evidence of mental-health improvement, it can sometimes be difficult to determine whether such improvement is attributable to the treatment being administered or the inherent tendency of mental-health symptoms to wax and wane. *See, e.g., Wellington*, 878 F.3d at 876; *Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence…."). Further, simply because a claimant shows some improvement does not mean that his symptoms have improved to point where they no longer preclude competitive employment. *See Garrison*, 759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). As such, for evidence of successful treatment to provide a valid basis for an ALJ to reject the claimant's mental-health symptom reports, the evidence must demonstrate that (1) the relief is lasting, and (2) the type and degree of relief are such that it is truly at odds with the symptom reports being rejected. *See Garrison*, 759 F.3d at 1017–18; *see also Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998)

(recognizing that an ALJ must account for the context of the claimant's prior report as well as the nature of his impairment and its symptoms).

Contrary to Defendant's claim that the ALJ made "well-supported findings," the ALJ's analysis of Dr. Genthe's opinion cites no record evidence, let alone record of sustained, lasting improvement that is at odds with Dr. Genthe's July 2019 opinion. *See* Tr. 24. Defendant refers generally to the ALJ's summary of the record at Tr. 21-22. Upon review, the ALJ did not cite records reflecting lasting improvement at odds with Dr. Genthe's opinions. For example, although Plaintiff's office visit on July 11, 2019 at Moses Lake Community Health indicated Plaintiff's depression and anxiety disorder was "improved" (based on standard screening test results), the same treatment note indicates that "daily activities are very difficult" with symptoms of anxiety and depression. Tr. 500. The two office visit notes from July and August 2019 remarking that Plaintiff's depression was "controlled" by medication, were office visits for treatment of diabetes. Tr. 1207, 1214. The ALJ's finding that Plaintiff's symptomatology fluctuated is a more accurate statement of the record and one that is not at odds with Dr. Genthe's July 2019 opinion. *See* Tr. 22; Tr. 493 (7/30/2019) (assessing deterioration of conditions and stating daily activities are very difficult with symptoms of anxiety and depression); Tr. 508-10 (6/6/2019) (changing medication as symptoms of depression had not been improving, noting daily activities extremely difficult with

symptoms of anxiety, encouraging EMDR therapy); Tr. 513-16 (5/23/2019) (assessing deterioration of major depression and generalized anxiety disorder, and diagnosing chronic post-traumatic stress disorder); Tr. 1273 (5/23/2019) (noting severe symptoms that markedly interfere with functioning); Tr. 1323 (1/6/2021) (noting increased anxiety, depression, and irritability); Tr. 1345 (3/10/2021) (noting ongoing symptoms of depression and no progress toward decreasing anxiety symptoms); Tr. 1345 (3/10/2021) (noting ongoing symptoms of depression and lack of progress toward decreasing symptoms of anxiety).

The ALJ's findings as to the consistency of Dr. Genthe's July 2019 opinion are not supported by substantial evidence.

## CONCLUSION

The ALJ's decision finding Dr. Genthe's July 2019 opinion "unpersuasive" is not supported by substantial evidence. As such, the Court overrules Defendant's objections to the Report and Recommendation. The Court concurs with the reasoning of the Report and Recommendation, but includes additional findings herein. The Court further concurs with the result reached by Report and Recommendation and finds further administrative proceedings are necessary to develop the record and resolve conflicts in the record. However, the Court modifies the remand instructions as follows.

Upon remand, the ALJ shall develop the record by obtaining all updated

ORDER - 15

treatment records and medical expert testimony, reevaluate the medical opinion evidence, including the July 2019 opinion of Dr. Genthe, redetermine the RFC as needed, and proceed to the remaining steps as appropriate.

Accordingly, **IT IS ORDERED**:

1. Defendant's objections to the Report and Recommendation, **ECF No. 21**, are **OVERRULED**.

2. The Report and Recommendation, **ECF No. 20**, is **ADOPTED** in its entirety, with the additional explanation herein.

3. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**. The Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

5. Upon proper presentation, the Court will consider Plaintiff's application for fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

The District Court Executive is directed to enter this Order, **ENTER JUDGMENT** in favor of Plaintiff, forward copies to counsel and Magistrate Judge Ekstrom, and **CLOSE THE FILE**.

DATED October 26, 2023.

<u>s/Robert H. Whaley</u>
ROBERT H. WHALEY
Senior United States District Judge